# TOBIN *v.* DISTRICT OF COLUMBIA.

### SALE OF LIQUOR; SUNDAY LAWS.

Testimony in a prosecution for keeping a barroom open on Sunday in
  violation of the act of Congress of March 3, 1893, which shows that the
  owner was seen at nine A. M. going with a bottle of beer into a billiard
  room adjoining his barroom, in which former room there were two
  men, is insufficient to support a conviction where the uncontradicted
  and unimpeached testimony for the defense is that the defendant had
  gotten the beer for his own use and did not know of the presence of
  the two men in the billiard room into which he was going for the pur-
  pose of extinguishing the lights there, which had been burning all
  night, and that the two men were waiting to collect money due them
  for vegetables supplied the defendant's family the preceding week.

No. 1348.   Submitted October 9, 1903.   Decided November 4, 1903.

IN ERROR to the Police Court of the District of Columbia.
*Reversed.*

The COURT in the opinion stated the case as follows:

The plaintiff in error, Edwin Tobin, was the keeper of a li-
censed barroom in the city of Washington, and was convicted in

the police court upon an information charging him with failing to have his barroom closed on April 5, 1903, the same being Sunday. It appears from the bill of exceptions that Tobin occupied two adjoining houses, in one of which, No. 456 Louisiana avenue, he had his barroom. The adjoining house he occupied with his family. In the front basement of this house he had but recently erected a billiard table. From this room communication was had with the barroom by a flight of four or five steps and a door. Back of the billiard room was a small room or hall, and back of that the kitchen used by Tobin. About 9 A. M. on the Sunday mentioned the witness for the prosecution, a policeman, looked through the front windows of the barroom— there being neither blinds nor screens—and saw no person inside. He then entered the second building by the hallway, and finding an open door leading into the small room, between the kitchen and billiard room, passed through to the kitchen. Mrs. Tobin was there and told him that Tobin was in bed. He next entered the billiard room and there saw two men, Peter and J. L. Chaconas, who were standing by the billiard table. The door at the head of the flight of stairs was open. About the same time Tobin came from the saloon room with a bottle of beer in his hand. Replying to witness' question, Tobin said he had gotten the beer to drink himself. He stated that he did not know the men were in the billiard room when he got it; that they were not present by his invitation or consent, and had not asked for drink. Upon this the prosecution rested.

The defendant demurred to the sufficiency of the evidence and excepted when overruled. Tobin then testified on his own behalf substantially that he kept the gas burning in his saloon at night, as required by law; that about 9 A. M. on the day charged he came down and went through the billiard room into the barroom to turn out the light and get a bottle of beer for his own use; that there was no person in either room; he had invited no one and expected no one; that neither the barroom nor billiard room was open to the public, and, in fact, had not been opened at all by any outside doorway, but only by the doorways connecting them with his kitchen and living rooms; that while he was

turning out the lights in the barroom the Chaconas must have
come in through the back hall, as they were standing in the bil-
liard room when he came to the steps; that he had not gotten the
beer for them or for any one but himself; that the policeman
was also present; that the Chaconas were vegetable dealers, who
delivered his weekly supplies of vegetables, and stated that they
had called for payment. The two Chaconas—Greeks, who
spoke English badly—testified that they had been accustomed to
supply vegetables to Tobin from week to week, and that they usu-
ally went to his house on Sunday to collect the week's account,
because they had more time on that day; that they entered by
the hall and went to the kitchen; that Mrs. Tobin told them
that she did not think Tobin had come down from his bedroom,
as she had not seen him; that they waited in the kitchen for ten
or fifteen minutes; that seeing the new billiard table in the front
room they went to examine it; that no one invited them to enter;
that they did not know Tobin had come down stairs until they
saw him coming from the barroom with the bottle of beer in his
hand; that they had not asked for beer and did not enter the
billiard room for the purpose of getting drinks of any kind; that
about the same time the policeman came in.

Both these witnesses denied that they had told the policeman
that they had come for the weekly order for vegetables, and had
gotten it. In rebuttal two policemen stated that one or both of
the Chaconas had said that they had come for an order and ob-
tained it. Upon the conclusion a motion to discharge the de-
fendant because of the insufficiency of the evidence was made
and overruled, with exception again properly noted. The court
then found the defendant guilty and sentenced him to pay a fine
of $50. From that judgment the writ of error was granted.

*Mr. John M. Thurston* for the plaintiff in error.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. A.
Leftwich Sinclair,* Assistant, for the defendant in error:

1. The testimony was undoubtedly sufficient to support a con-

viction.    It will be observed that the defendant and his two wit-
nesses, Chaconas brothers, two Greeks, who spoke English very
imperfectly, *were discredited.    The court did not believe them;*
and, doubtless, the court was influenced in some measure by
*their demeanor upon the witness stand.*

In such a case as the one at bar it is sufficient to prove "a
course of conduct tending to show" that the accused violated the
law in the manner alleged in the information.    *Lauer* v. *D. C.*
11 App. D. C. 453.    A tippling-house must be closed on the
Sabbath day, and *if the owner keep it open but for a moment, it
is a violation of the statutes.    Monses* v. *State,* 78 Ga. 110; *Wil-
liams* v. *State,* 100 Ga. 511.    And the purpose of its being open
is not material.    Though the *purpose may have been a perfectly
innocent and harmless one, that does not lessen the criminality
of the act.    Klug* v. *State,* 77 Ga. 734; *People* v. *Waldvogel,* 49
Mich. 337; *People* v. *Blake,* 52 Mich. 566; *People* v. *Talbert,*
120 Mich. 486; *Hannan* v. *Dist. of Col.* 12 App. D. C. 265.

2. It was not incumbent upon the District to prove a sale of
liquor on Sunday, to procure a conviction, *if the barroom was
open within the intendment of the law.*    While the statute pro-
hibits the *sale* of intoxicants on Sunday, the *keeping open* of a
place where liquors are sold is an entirely distinct and independ-
ent offense.    If a liquor-dealer *keeps his place of business open
on Sunday* and then and there *sells liquor,* he is guilty of two
separate and distinct offenses, and may be punished for both.
*Lehman* v. *District of Columbia,* 19 App. D. C. 217; *Sullivan* v.
*District of Columbia,* 20 App. D. C. 29; *Lauer* v. *District of Co-
lumbia,* 11 App. D. C. 453.


Mr. Justice SHEPARD delivered the opinion of the Court:


It is provided, among other things, in § 6 of the act of March
3, 1893, that   "*   *   *   on Sundays, every barroom and oth-
er place where intoxicating liquors are sold shall be kept closed
and no intoxicating liquor sold."    [27 Stat. at L. 565, chap.
204.]    This language must be reasonably construed.    And so
construed it is not believed that it could have been the intention

of Congress to deprive a person and his family of the ordinary privileges of their home because a bar where liquors are sold happens to be located in the same premises. *Hannan* v. *District of Columbia,* 12 App. D. C. 265, 268. The purpose of the law is thus stated in that case: "The bar must be kept closed, and the barroom—that is, the room devoted to the uses of the bar—must be kept closed against all who would resort to such place to obtain liquor on Sunday; and this requirement must be strictly observed and enforced." It is quite true also that this prohibition cannot be evaded by keeping open a room adjacent, or near by, to which liquors can be carried from the barroom on Sunday to persons coming, or invited to come, there for the purpose of obtaining them. *Sullivan* v. *District of Columbia,* 20 App. D. C. 29, 35. Nor is it necessary that there should be an actual sale of liquor; the offense is complete if the opening of the barroom is such that the public may have access to it. *Lehman* v. *District of Columbia,* 19 App. D. C. 217, 226.

Applying the law as stated in those decisions to the evidence in this case, we are of the opinion that it is not sufficient to support the conviction, and that the last motion on behalf of the defendant should, therefore, have been granted.

The hall by which all the parties entered was necessary to the use of the residence, of which it was a part, and led into the small middle room or hall adjoining the billiard room on one side, and on the other the kitchen in which the wife of the defendant prepared the family meals. There is nothing to indicate that it was devised also as a means of regular or occasional access to the billiard room and thence to the barroom. The defendant had the right to enter his barroom, both for the purpose of extinguishing the light and for procuring supplies for his own or his family's use, provided that in so doing he did not furnish the public means of access thereto. Now if the Chaconas had not entered the building it would be quite clear that the act of defendant in visiting the barroom and returning with a bottle of beer for his own use would not have been a violation of the law. Could, then, the uninvited and unexpected entry of these men from the kitchen into the billiard room convert his act into an

D. C.]                           Syllabus.

offense? We think not. The circumstances as they appeared to the policeman, if unexplained, might probably have been sufficient to sustain a conviction. But that is not the case presented. They were reasonably explained by witnesses who were neither impeached nor contradicted in any material particular. Circumstances that may create a strong suspicion of guilt are not sufficient to convict of crime.

The judgment will be reversed. It is so ordered. *Reversed.*